DECISION AND JOURNAL ENTRY
{¶ 1} Appellant, James Lee Downing, appeals from his conviction in the Summit County Court of Common Pleas for rape and gross sexual imposition. We affirm.
 I. {¶ 2} At the time of this incident, 41 year-old James Lee Downing was living with his girlfriend, Pamela Brewington, in her Akron home. The two were sharing Ms. Brewington's bedroom, which was also shared with an infant godchild. At least two pre-adolescent boys, a child and grandchild of Ms. Brewington, also lived in this two-bedroom home, customarily sleeping in the bedroom adjacent to Downing-Brewington's shared bedroom. The 12 year-old victim in this case was a male friend to these two boys, but not a relative to Ms. Brewington. However, in this unorthodox living arrangement, Ms. Brewington was like a surrogate grandmother to the victim, and he would often sleep at her home. Although this boy had a close and trusting relationship with Ms. Brewington, and even refers to her as his grandmother, he had no established relationship with Mr. Downing other than knowing him as Ms. Brewington's live-in boyfriend.
 {¶ 3} On the night in question, after Ms. Brewington had retired to her room to sleep, the three young boys accompanied Mr. Downing to the store, where he purchased snacks and beer. While in the car, Mr. Downing made his first approach to the victim by awkwardly touching and grabbing the boy's penis while ostensibly reaching for his drink. At the time, the boy did not recognize this as anything more than an accident. The four returned to Ms. Brewington's home.
 {¶ 4} At the house, Mr. Downing gave the boys some beer, coaxing them to drink it and watching the victim keenly throughout the evening. Eventually, Mr. Downing retired to the bedroom with Ms. Brewington. The other two children fell asleep in the living room, but the victim fell asleep alone in the second bedroom where he had been playing video games.
 {¶ 5} During the night, Mr. Downing got up from bed, placed a blanket over the two children asleep in the living room, and proceeded back to the adjacent bedroom to rape the unaccompanied victim. Mr. Downing first laid on top of the boy and then pulled down the boy's pants. When the boy awoke fully, Mr. Downing held his arms while the 12 year-old victim struggled to resist. Mr. Downing put his mouth around the boy's penis and sucked on it. Later, he urged the boy to suck on his own penis. When the victim refused, Mr. Downing rolled him over "to get to [his] butt," and began "going up and down like he was having sex with a girl," before finally relenting and masturbating until he ejaculated, or "busted a nut" as he called it. Mr. Downing left the room, but returned repeatedly to insist to the boy that he was a good boy, that the incident was a secret, and that he must tell no one.
 {¶ 6} Because she had an infant child in her own room, Ms. Brewington was awake periodically during the night and, on at least one occasion, saw Mr. Downing enter and exit the adjacent bedroom. Mr. Downing eventually returned to Ms. Brewington's room, where she awoke to find him laying asleep across the bottom of her bed, not beside her as was his custom.
 {¶ 7} The next morning, Ms. Brewington thought the victim was acting sheepish, but did not suspect the rape. When the boy telephoned another of Ms. Brewington's daughters and asked her to come pick him up, Ms. Brewington sent the three boys to the daughter's home. But later, when the victim refused to go to the roller rink with the others, the daughter's boyfriend began to question the boy and he revealed the sexual assault. This boyfriend contacted the victim's father and the group of suspicious adults confronted Mr. Downing at Ms. Brewington's home. No violence arose from this confrontation, but nevertheless, nothing was resolved. Eventually, the police were summoned and Mr. Downing voluntarily accompanied the officers to the police station for questioning, never to return to Ms. Brewington's home.
 {¶ 8} At the station, police officers informed Mr. Downing that he was not in custody but also informed him of his Miranda rights before questioning him about the incident in a tape-recorded interview. After repeated denials, Mr. Downing eventually confessed to the sexual encounter, but insisted that there was no force. Concurrently, the victim was taken to a local hospital for examination, which included an interview with medical personnel and forensic swabs from his penis and rectum for DNA testing. Mr. Downing provided a DNA sample for comparison and subsequently both the State and Mr. Downing's defense attorneys had samples analyzed for comparison. Neither analysis eliminated Mr. Downing as the source of fluids on the victim's penis and sperm in his rectal area, and the more conservative result (the defendant's) reported that the likelihood of someone else being the source was a remote one in 1.77 trillion probability. The State's result made it even less likely that it was anyone else.
 {¶ 9} Officers arrested Mr. Downing and charged him with rape, per R.C. 2907.02(A)(1)(b), a first degree felony, and gross sexual imposition, per R.C. 2907.05(A)(4), a third degree felony. Both of these charges are predicated on the victim's age, less than 13 years old. Mr. Downing pled not guilty, and trial was originally scheduled for February 5, 2003. On January 20, 2003, Mr. Downing executed a time waiver, and nine days later moved to suppress the confession and incriminating statements he had made at the police station. A hearing was held on the motion to suppress, the court requested additional briefing, and the motion was ultimately denied. Trial was rescheduled for July 28, 2003.
 {¶ 10} At pretrial on July 25, 2003, the prosecution forewarned defense counsel and the court of the inculpatory DNA results and that they intended to use the DNA evidence at trial, although they did not yet have the actual written reports in their possession. In a hearing on the record, defense counsel opposed the introduction of this evidence, but when the court overruled the motion, sought a continuance to prepare a defense or rebuttal evidence. After a minor outburst from Mr. Downing, the trial judge prudently elicited further testimony from Mr. Downing to ensure that he acceded to the continuance and waived his speedy trial right voluntarily and knowingly. The trial was rescheduled for October 15, 2003.
 {¶ 11} In September 2003, Mr. Downing filed a motion to dismiss based on the alleged violation of his right to a speedy trial. On September 23, 2003, the court heard and denied the motion, as well as certain others. Later, Mr. Downing again moved for a continuance and the trial was rescheduled to January 7, 2004. In the meantime, the court authorized $1,000 to Mr. Downing for an independent defense expert, and eventually the case proceeded to jury trial.
 {¶ 12} During a three day trial, the State presented evidence, including testimony by the victim and the investigating officers, Mr. Downing's taperecorded confession, and the DNA results. A jury found Mr. Downing guilty on both counts and sentenced him accordingly. Because the crimes were sex offenses, the trial court conducted a hearing and ultimately determined that Mr. Downing is a child victim predator, per R.C. Chapter 2950.
 {¶ 13} Mr. Downing appeals from his convictions, and asserts seven assignments of error for review.
 II. A. First Assignment of Error
"Appellant was denied a fair trial as Guaranteed by the Sixth
and Fourteenth amendments of the United States constitution in that the defendant was denied the effective assistance of counsel[.]"
 {¶ 14} Mr. Downing alleges that his trial counsel was so ineffective as to render his conviction unjust, and points to 14 particular instances of the purported ineffectiveness. Mr. Downing reasons that, due to this perceived ineffectiveness, he deserves a new trial. We disagree.
 {¶ 15} The Sixth Amendment guarantees a criminal defendant the effective assistance of counsel. See McMann v. Richardson
(1970), 397 U.S. 759, 771, 25 L.Ed.2d 763. In determining whether the right to effective assistance of counsel has been violated, courts employ a two-step process:
"First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland v. Washington (1984),466 U.S. 668, 687, 80 L.Ed.2d 674.
 {¶ 16} The defendant has the burden of proof, and must overcome the strong presumptions that counsel's performance was adequate and that counsel's action might be sound trial strategy.State v. Smith (1985), 17 Ohio St.3d 98, 100. Furthermore, an attorney properly licensed in Ohio is presumed competent. Statev. Lott (1990), 51 Ohio St.3d 160, 174. "Ultimately, the reviewing court must decide whether, in light of all the circumstances, the challenged act or omission fell outside the wide range of professionally competent assistance." State v.DeNardis (Dec. 29, 1993), 9th Dist. No. 2245, citingStrickland, 466 U.S. at 690.
 {¶ 17} This Court does not need to address these elements in any particular order. If we conclude that prejudice to the defendant did not result from defense counsel's actions or omissions, then we need not address whether counsel's actions or omissions were actually deficient. State v. Bradley (1989),42 Ohio St.3d 136, 143. In demonstrating prejudice, the defendant must prove that "there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." Id., at paragraph three of the syllabus. In addition, the court must evaluate "the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Strickland,466 U.S. at 690.
 {¶ 18} Mr. Downing raises 14 arguments in support of his ineffective assistance of counsel claim. We will recount each in turn:
 {¶ 19} "False Confession Syndrome" Expert Witness. Mr. Downing alleges that his trial counsel erred in failing to request that the court provide for an expert to testify as to "false confession syndrome." However, it is established as a matter of law that the decision of whether or not to seek appointment of an expert is trial strategy. State v. Fisk, 9th Dist. No. 21196, 2003-Ohio-3149, at ¶ 9, citing State v.Coleman (1989), 45 Ohio St.3d 298, 307-08. Moreover, Mr. Downing does not provide any proof that this would have produced a different outcome. He does not now proffer an opinion from an expert, to suggest what that expert would have said then. He does not elaborate on false confession syndrome, what it is or how it applies. From this we conclude that Mr. Downing has failed to meet his burden of proof that counsel was deficient or that he was prejudiced thereby.
 {¶ 20} DNA Evidence. Mr. Downing alleges that his trial counsel erred in failing to move to exclude or limit the introduction of the DNA evidence, emphasizing that it was particularly prejudicial because it was provided only three days before the July 2003 court date. However, as a matter of law, the decision of whether or not to file a motion to suppress is a trial strategy. Fisk at ¶ 9, citing State v. Phillips (1995),74 Ohio St.3d 72, 85.
 {¶ 21} The Tape-recording. Mr. Downing alleges that his trial counsel erred in failing to move to exclude the tape recording which documented Mr. Downing's confession, emphasizing particular unreliability due to gaps in the taped conversation. The State responds by pointing out that Mr. Downing's counsel did move to suppress the tape, but that the court denied the motion. Thus, Mr. Downing's claim is factually insupportable. Furthermore, we reiterate that the decision to file a motion to suppress is a trial strategy. Fisk at ¶ 9.
 {¶ 22} Merger of Rape and GSI. Mr. Downing alleges that his trial counsel erred in failing to move the court to merge the rape and gross sexual imposition counts. The State responds that, as separate offenses with differing elements, the proposed motion would have failed and Mr. Downing cannot prove any prejudice. Furthermore, we infer from the established law, as cited frequently in these 14 allegations, that the decision to file this motion is a trial strategy. See Fisk at ¶ 9, citingPhillips, 74 Ohio St.3d at 85.
 {¶ 23} Prosecutor's Mention of GSI in Closing Argument. Mr. Downing alleges that his trial counsel erred in failing to object to the prosecutor's statement during closing argument that the jury could find gross sexual imposition from his rubbing of the boy prior to the oral sex. However, as a matter of law, a counsel's decision of whether or not to object at certain times during trial is considered a trial tactic or strategy. Fisk at ¶ 9, citing Phillips, 74 Ohio St.3d at 85.
 {¶ 24} Birth Certificate. Mr. Downing alleges that his trial counsel erred in failing to move for some certified documentation of the victim's age. The State responds by pointing out that both the victim and his father testified that the victim's birthday was March 9, 1990, and that Mr. Downing offers no authority for the proposition that this testimony is insufficient to prove the victim's age. As such, we cannot conclude that this omission is outside the bounds of competent attorney conduct or unduly prejudicial. Mr. Downing has failed his burden of proof on this issue.
 {¶ 25} Prosecution's Medical Expert. Mr. Downing alleges that his trial counsel erred in failing to object to the prosecution's medical expert, stating that the doctor had no articulable bases for his conclusions. However, we reiterate that counsel's decision to object at certain times during trial is merely a trial strategy. Fisk at ¶ 9, citing Phillips,74 Ohio St.3d at 85.
 {¶ 26} Prosecutor's Mention of DNA Probabilities in Openingand Closing Arguments. Mr. Downing alleges that his trial counsel erred in failing to object to the prosecutor's misstatement of the DNA probabilities during both opening and closing arguments. The State responds that either of the proper probability numbers, even the more conservative of the two, is conclusively incriminating and thereby demonstrates that Mr. Downing cannot show prejudice in this allegation. Again, counsel's decision to object at certain times during trial is a trial strategy. Fisk at ¶ 9, citing Phillips,74 Ohio St.3d at 85.
 {¶ 27} Defendant Not Testifying at the Suppression Hearing.
Mr. Downing alleges that his trial counsel erred in failing to have him testify at his suppression hearing, as to the coercive nature of the confession. The State responds that, without a proffer, anything Mr. Downing might have said at that hearing, not to mention the effect of such testimony on the outcome, is entirely speculative. We agree. Speculation is insufficient to establish the requisite prejudice. See State v. Stalnaker, 9th Dist. No. 21731, 2004-Ohio-1236, at ¶ 8-10. Furthermore, Mr. Downing does not suggest that his counsel forbade him from testifying, but merely that counsel made an unsound strategic decision in forgoing his testimony. Mr. Downing has failed to meet his burden of proof on this issue.
 {¶ 28} Cross-examination on Cross-contamination. Mr. Downing alleges that his trial counsel erred in failing to cross-examine the State's crime scene unit officer on possible cross-contamination of the DNA evidence. However, defense counsel did thoroughly cross-examine this witness, including the limitations of ultraviolet light and the failure to conduct further analysis of certain items. Furthermore, as a matter of law, trial counsel's decisions of whether to cross-examine a witness and the extent of such cross-examination are tactical matters. State v. Likosar, 9th Dist. No. 03CA0063-M, 2004-Ohio-114, at ¶ 26.
 {¶ 29} Stipulation of Expert. Mr. Downing alleges that his trial counsel erred in stipulating to the qualifications of the State's forensic expert. The State responds by pointing out that this witness testified to her qualifications despite the stipulation, that Mr. Downing's counsel did object to certain evidence on the basis that the court never formally recognized the witness as an expert, and that counsel thoroughly cross-examined this witness. We infer from the established law, cited frequently in these 14 allegations, that the decision of whether or not to file such a motion is a trial strategy. SeeFisk at ¶ 9; Likosar at ¶ 26.
 {¶ 30} Social Worker Testimony. Mr. Downing alleges that his trial counsel erred in failing to object to the State's questions, posed to its social worker witness during direct testimony, alleging that these questions surreptitiously implicated Mr. Downing's credibility despite the fact that he did not testify. Once again, we reiterate that counsel's decision to object at certain times during trial is trial strategy. Fisk at ¶ 9, citing Phillips, 74 Ohio St.3d at 85.
 {¶ 31} Prosecutorial Misconduct in Withholding of the DNAEvidence. Mr. Downing alleges that his trial counsel erred in failing to charge prosecutorial misconduct for withholding evidence in violation of Crim.R. 16, because the DNA report was not provided to defense counsel until July 30, 2003 even though it was dated May 7, 2003. During the July 24, 2003 hearing, the State explained that even then they did not have the actual DNA reports, but forewarned the court and defense counsel of the incriminating information that those reports would present once received. The court found this discussion credible, expressed its intent to admit the evidence, ordered the State to provide the reports as soon as possible, and granted a continuance of the trial so that defense counsel would have time to rebut or defend against the information. The State responds by pointing out that these accusations of prosecutorial misconduct are founded purely in speculation. As mere speculation, they are insufficient. SeeStalnaker at ¶ 8-10. The decision to object at certain times during trial is trial strategy. Fisk at ¶ 9. We find no deficiency or prejudice in the failure to charge prosecutorial misconduct.
 {¶ 32} Motion for Judicial Recusal and Motion for AppointedCo-counsel. Mr. Downing alleges that his trial counsel erred in failing to file written motions seeking judicial recusal and appointed co-counsel, after the trial court considered and denied these very same motions made orally to the court. The State responds that this argument is based entirely on the speculation that the outcome of a written motion would have been different than the denial of the oral motion, and suffers from an absence of even an allegation or suggestion of why the outcome would have been different. See Stalnaker at ¶ 8-10. Furthermore, we infer from the established law that the decision of whether or not to file this motion is a trial strategy. See Fisk at ¶ 9;Likosar at ¶ 26.
 {¶ 33} Therefore, based on our review of Mr. Downing's arguments and consideration of prevailing law, we find that almost every one of the allegations is properly characterized as a trial strategy, and thus insufficient to satisfy a claim of ineffective assistance. We find the others to be merely speculative or to lack a demonstration of prejudice. Based on this analysis, we conclude that Mr. Downing has failed to meet his burden of proof on this assignment of error.
 {¶ 34} Mr. Downing's first assignment of error is overruled.
 B. Second Assignment of Error
"The trial court erred by overruling defendant-appellant's motion to dismiss on the grounds that he was denied his right to a speedy trial as guaranteed by the sixth amendment to the constitution of the United States, Article I, section 10 of the constitution of the state of Ohio and Ohio revised Code Section2945.71[.]"
 {¶ 35} Mr. Downing asserts that the trial court erred by continuing the trial so that his counsel could prepare a defense to the DNA results, effectively denying his right to a speedy trial. We disagree.
 {¶ 36} When reviewing an appellant's claim that he was denied his right to a speedy trial, this Court applies the de novo standard of review to questions of law and the clearly erroneous standard of review to questions of fact. State v. Thomas (Aug. 4, 1999), 9th Dist. No. 98CA007058.
 {¶ 37} Both the Sixth Amendment to the United States Constitution and Section 10, Article I of the Ohio Constitution guarantee a criminal defendant the right to a speedy trial.State v. Pachay (1980), 64 Ohio St.2d 218, 219. Furthermore, courts must strictly enforce such rights. Id. at 221. This "strict enforcement has been grounded in the conclusion that the speedy trial statutes implement the constitutional guarantee of a public speedy trial." Id., citing State v. Pudlock (1975),44 Ohio St.2d 104, 105.
 {¶ 38} R.C. 2945.71 dictates the time limits within which a defendant must be brought to trial. Pursuant to R.C. 2945.73, if a defendant is not brought to trial within the prescribed time period, the trial court must discharge the defendant upon a motion for dismissal prior to or at the commencement of trial. R.C. 2945.73(B). But, the time within which a defendant must be brought to trial can be tolled. R.C. 2945.72. The time may be tolled for "[a]ny period of delay necessitated by reason of a plea in bar or abatement, motion, proceeding, or action made or instituted by the accused[.]" R.C. 2945.72(E).
 {¶ 39} Mr. Downing's principal charge was a first degree felony, which, pursuant to R.C. 2945.71(C)(2), gave the State 270 days to bring him to trial. The charge was filed on December 1, 2002, but 50 days later (January 20, 2003) Mr. Downing signed a time waiver, which tolled the time while his motion to suppress was pending. On March 15, 2003, the trial court issued an order denying the motion to suppress, which set a new trial date and restarted the running time. At a pretrial conference on July 25, 2003 (132 days later; 182 total), Mr. Downing's attorney sought a continuance to prepare a defense to the DNA evidence and the trial was rescheduled to October 15, 2003. Moreover, after an outburst from Mr. Downing, the trial judge cautiously and prudently engaged in a colloquy with Mr. Downing to ensure that he acceded to the continuance and waived his speedy trial right voluntarily and knowingly. Therefore, the motion and Mr. Downing's agreement to the waiver were properly recorded in the hearing transcript.
 {¶ 40} On September 9, 2003, while the time was still tolled and over a month before the scheduled trial date, Mr. Downing filed a motion to dismiss based on his alleged violation of his right to a speedy trial. Although this motion was filed 273 days after his original indictment was filed, there had been two tolling periods in between, and the count was then tolled at 182 days, based on Mr. Downing's waiver. When this motion was denied, Mr. Downing moved for another continuance and the trial was rescheduled for January 7, 2004. Although Mr. Downing was not actually brought to trial until 393 days after his initial arrest, due to his own waivers and motions, he accumulated only 182 days towards his speedy trial requirement. Therefore, the State tried Mr. Downing within the 270 day statutory period and his speedy trial right was not violated. Therefore, the trial court did not err in denying the motion.
 {¶ 41} Mr. Downing's second assignment of error is overruled.
 C. Third Assignment of Error
"The trial court erred by ruling that the BCI report which was obtained on may 7, 2003 by the akron police department would be permitted to be entered into evidence by the state on the july 27, 2003 trial date when said report was not made known to defense counsel as late as July 24, 2003 in violation of Criminal rule 16."
 {¶ 42} Mr. Downing asserts that the trial court erred in admitting particular incriminating evidence against him. We disagree.
 {¶ 43} We review a trial court's admission of evidence for abuse of discretion. State v. Ahmed, 103 Ohio St.3d 27, 40,2004-Ohio-4190, at ¶ 79. An abuse of discretion is "more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable," Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219, it is a "perversity of will, passion, prejudice, partiality, or moral delinquency."Pons v. Ohio State Med. Bd. (1993), 66 Ohio St.3d 619, 621. Under this standard, an appellate court may not merely substitute its judgment for that of the trial court. Id. Therefore, an appellant must demonstrate more than mere trial court error, but also that the trial court abused its discretion in committing that error. See App.R. 16(A)(7).
 {¶ 44} Mr. Downing argues that the DNA evidence was prejudicial to his defense, that it was technical and unanticipated, and that Crim.R. 16 mandates that the State produce such evidence more than three days before the scheduled trial. Mr. Downing does not specifically argue abuse of discretion, but expresses grave concern over the trial court's failure to sanction the State under these circumstances. We begin by noting that, of course, the evidence was prejudicial to Mr. Downing's defense; such is the nature of the prosecution's preferred evidence against a defendant when they are in the process of prosecuting that defendant. We also agree that DNA evidence is complicated; such is the nature of complex, scientific evidence. However, we are not persuaded that it was wholly unanticipated that DNA evidence would be used in this rape case, particularly in light of the fact that the police had previously collected DNA samples from Mr. Downing for comparison purposes.
 {¶ 45} Furthermore, we do not read Crim.R. 16 to impose some rigid timeframe for disclosure of evidence after which the parties must be sanctioned. Rather, we read Crim.R. 16(B)(1)(d) to require disclosure of test results upon order by the court, which occurred in this case. Although the State offered the information in the present case, under this rule such an order is predicated on a defendant's motion. See Crim.R. 16(B)(1)(d). We read Crim.R. 16(B)(1)(f) to require ongoing disclosure of exculpatory material, which this DNA evidence was not, by defendant's own assertions. We read Crim.R. 16(D) to require prompt notice, so that the defendant may move for disclosure or the court so order, which is what occurred in this case. Finally, we read Crim.R. 16(E)(3) to afford the court discretion in its response to a party's failure to comply with discovery: "the court may order such party to permit the discovery or inspection, grant a continuance, or prohibit the party from introducing in evidence the material not disclosed[.]" (Emphasis added.) Hereunder, the court ordered the State to provide the DNA reports and granted a continuance to allow defense counsel an opportunity to rebut or defend against this evidence at trial. Based on the language of the rule and the prudence of the trial court, we cannot find an abuse of discretion in admitting this evidence.
 {¶ 46} Mr. Downing's third assignment of error is overruled.
 D. Fourth Assignment of Error
"The trial court erred in failing to merge the conviction of rape with the conviction of gross sexual imposition and in permitting the prosecution to mistate [sic] the law regarding the two charges to the jury[.]"
 {¶ 47} Mr. Downing asserts that the trial court erred in failing to merge the rape charge with the gross sexual imposition charge, implicitly arguing that one necessarily includes the other. We disagree.
 {¶ 48} R.C. 2941.25, Ohio's allied offenses statute, protects against multiple punishments for the same criminal conduct in violation of the Double Jeopardy Clauses of the Fifth Amendment to the United States Constitution and Section 10, Article I of the Ohio Constitutions. State v. Moore (1996),110 Ohio App. 3d 649, 653. Specifically, R.C. 2941.25 states:
"(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.
"(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them."
 {¶ 49} In determining whether crimes are allied offenses of similar import under R.C. 2941.25(A), courts must assess "whether the statutory elements of the crimes correspond to such a degree that the commission of one crime will result in the commission of the other." (Internal quotations omitted.) State v. Rance
(1999), 85 Ohio St.3d 632, 638. If the elements do so correspond, the defendant may not be convicted of both unless the court finds that the defendant committed the crimes separately or with separate animus. Id. at 638-39. The burden of establishing that two offenses are allied falls upon the defendant. State v.Douse (Nov. 29, 2001), 8th Dist. No. 79318. Therefore, we must review the defendant's conduct to determine whether the rape and gross sexual imposition were committed separately, or with separate animus. Rance, 85 Ohio St. 3d at 638-39.
 {¶ 50} Mr. Downing appears to argue that the acts charged against him, at most, constitute one uninterrupted episode without a separate animus to each. That is, the rubbing and the groping of the boy merges with Mr. Downing's act of sucking on the boy's penis as one continuous rape episode. The State responds that the offenses result from separate acts, the gross sexual imposition arising from the groping in the car and the rape from the late night encounter in the bedroom, including the sucking, humping and ejaculating of sperm into the boy's rectal area. See State v. Reed, 10th Dist. No. 02AP-694, 2003-Ohio-2412, at ¶ 36. The State also explains that these are not allied offenses because rape is predicated on "sexual conduct," R.C. 2907.02(A)(1), while gross sexual imposition is predicated on "sexual contact," R.C. 2907.05(A). These are differentiated by sexual contact (gross sexual imposition) requiring that the offender pursue some personal sexual arousal or gratification while sexual conduct (rape) has no such requirement. See R.C. 2907.01(A)-(B); State v. Tate (Oct. 26, 2000), 8th Dist. No. 77462. Similarly, our reading of the statute and consideration of the circumstances of this case leads to the conclusion that these are separate offenses that need not be merged.
 {¶ 51} As a collateral allegation, Mr. Downing attacks the prosecutor's closing argument statement, which indicated that the single continuous bedroom encounter would independently support conviction on both rape and gross sexual imposition charges. However, the jury is presumed to follow the instructions given to it by the trial judge. Ahmed at ¶ 147. Because the trial judge properly instructed the jury on the law, and Mr. Downing does not challenge the jury instruction, any misstatement by the State during closing argument was thereafter cured by the instruction of the trial court judge.
 {¶ 52} Mr. Downing's fourth assignment of error is overruled.
 E. Fifth Assignment of Error
"The trial court erred and deprived appellant of his due process rights by failing to provide sufficient funds in a timely manner for appellant to obtain expert assistance at trial."
 {¶ 53} Mr. Downing asserts that the trial court erred in failing to provide more money so that he could obtain a better expert, or at least obtain one sooner. We disagree.
 {¶ 54} Upon proper request, due process requires that the State provide an indigent criminal defendant with funds to obtain expert assistance when the trial court finds, in the exercise of its sound discretion, that the defendant has made a particularized showing: "(1) of a reasonable probability that the requested expert would aid in his defense, and (2) that denial of the requested expert assistance would result in an unfair trial."State v. Mason (1998), 82 Ohio St.3d 144, 150. Consequently, the trial court's denial of such expert assistance is reviewed under an abuse of discretion standard. Id. at 150.
 {¶ 55} False Confession Syndrome Expert. In May 2003, the trial court denied Mr. Downing's motion to suppress his confession, and thereby ordered that the confession could be admitted at trial. Mr. Downing now contends that the court's failure to provide funding for a false confession syndrome expert constitutes reversible error. However, Mr. Downing's counsel never requested any such funding and never suggested that he needed any such expert. As there was no request and no denial, under our standard of review, we have no basis to conclude that the trial court abused its discretion in this instance. See id.
 {¶ 56} DNA Expert. In July 2003, the State informed the court and defense counsel, during a pretrial conference three days before the scheduled trial, of its intent to use incriminating DNA results. The trial was continued until October 2003, to afford Mr. Downing the opportunity to prepare a defense, including time to engage an expert. During a September 2003 pretrial conference, Mr. Downing's trial counsel made a timely request for assistance to obtain such an expert, to which the court made a preliminary offer of $1,000 and frankly acknowledged that even more money may ultimately be necessary, based on the expert's preliminary findings. In October 2003, Mr. Downing's counsel informed the court that he had located an expert, asked the court to formalize the $1,000 authorization, and sought a continuance for time to incorporate the expert's findings into his defense. Specifically, Mr. Downing's counsel stated: "I think we'll be fine with $1000." The court continued the trial until January 2004. In a December 2003 pretrial, Mr. Downing's attorney explained to the court that, although he had promised it to his expert, the previous $1,000 authorization had never been journalized, to which the court responded by immediately approving it. In short, at no point during pretrial preparations was there ever a request for more money, a denial of any money, or a delay in granting the approval.
 {¶ 57} Mr. Downing now contends that the money granted for an expert was insufficient to afford him due process in his defense, and moreover, that the untimeliness of the eventual award needlessly prejudiced his defense. However, as there was no request and no denial, under our standard of review, we have no basis to conclude that the trial court abused its discretion in this instance. See Mason, 82 Ohio St. 3d at 150.
 {¶ 58} Mr. Downing's fifth assignment of error is overruled.
 F. Sixth Assignment of Error
"The trial court erred in denying defendant-appellant's motion to suppress his taped statement[.]"
 {¶ 59} Mr. Downing asserts that the trial court erred in admitting his confession and associated incriminating statements, over his motion to suppress. We disagree.
 {¶ 60} Under the Fifth Amendment to the United States Constitution, no person may be compelled to be a witness against himself. Miranda v. Arizona provides that in order to protect this right against self-incrimination, statements resulting from custodial interrogations are admissible only after a showing that law enforcement officers have followed certain procedural safeguards. Miranda v. Arizona (1966), 384 U.S. 436, 444,16 L.Ed. 2d 694. A defendant may, however, waive his Miranda rights, provided that such a waiver is knowingly, voluntarily, and intelligently made. Id. It is the prosecution's burden to prove, by a preponderance of the evidence, that the defendant knowingly, voluntarily, and intelligently waived those rights based on the totality of the circumstances surrounding the investigation.State v. Gumm (1995), 73 Ohio St.3d 413, 429.
 {¶ 61} The Ohio Supreme Court has set forth the test for determining whether a confession was involuntary:
"In deciding whether a defendant's confession is involuntarily induced, the court should consider the totality of the circumstances, including the age, mentality, and prior criminal experience of the accused; the length, intensity, and frequency of interrogation; the existence of physical deprivation or mistreatment; and the existence of threat or inducement." Statev. Edwards (1976), 49 Ohio St.2d 31, paragraph two of the syllabus.
 {¶ 62} In a hearing on a motion to suppress evidence, the trial court assumes the role of trier of fact, and a reviewing court should not disturb the trial court's findings on the issue of credibility of witnesses. State v. Callihan (1992),80 Ohio App.3d 184, 191. We are bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. Id.
 {¶ 63} Here, the trial court heard the actual audiotape of the interrogation, including the presentation to Mr. Downing of his Miranda rights followed by his verbal waiver. Thus, even though the State characterized the conversation as a non-custodial encounter, Mr. Downing was still afforded his Miranda rights. Furthermore, the court also heard testimony from the interrogating officer, and was best positioned to afford a measure of credibility to that officer.
 {¶ 64} Nothing in the totality of the circumstances suggested undue coercion, such as Mr. Downing's age, mentality, or prior criminal experience. See Edwards, 49 Ohio St.2d at paragraph two of the syllabus. The court found nothing unreasonable in the length, intensity or frequency of the interrogation, and found no evidence of physical deprivation or mistreatment. See id. The trial court thus concluded that the statements were made voluntarily and that Mr. Downing's constitutional rights had not been violated.
 {¶ 65} Mr. Downing relies on his perceived irrepressible inducement, arguing that the officers coerced him into a confession with trick questions and the illusory promise of mental treatment in lieu of prison if he would merely confess to consensual sex with the young boy. However, the trial court ruled, and we agree, that the law does not prevent the police from engaging in such deception, and that a confession so obtained need not be suppressed merely on that basis. See Statev. Loza (1994), 71 Ohio St.3d 61, 67; State v. Ulch (Apr. 19, 2002), 6th Dist. No. L-00-1355, citing Illinois v. Perkins
(1990), 496 U.S. 292, 298, 110 L.Ed.2d 243.
 {¶ 66} Mr. Downing's sixth assignment of error is overruled.
 G. Seventh Assignment of Error
"The cumulative errors in this case necessitate a new trial[.]"
 {¶ 67} Mr. Downing asserts that the trial court's cumulative errors create such a substantial injustice that his conviction requires reversal, even if the individual errors themselves may be dismissed under harmless error analysis. We disagree.
 {¶ 68} The issue for review in this assignment of error is whether the cumulative alleged errors were so prejudicial to Mr. Downing as to demand a new trial, or whether they constituted harmless error. The United States Supreme Court set forth the constitutional standard for evaluating whether an error is harmless in Chapman v. California (1967), 386 U.S. 18, 24,17 L.Ed.2d 705. Yates v. Evatt (1991), 500 U.S. 391, 402-03,114 L.Ed.2d 432 (overruled on other grounds). The Chapman test is whether it appears "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." Id. "Where constitutional error in the admission of evidence is extant, the error is harmless if the remaining evidence, standing alone, constitutes overwhelming proof of defendant's guilt." (Internal quotations omitted.) State v. Stephenson (Aug. 7, 1991), 9th Dist. No. 90CA004942, quoting State v. Williams
(1983), 6 Ohio St.3d 281, paragraph six of the syllabus. The harmless-error doctrine recognizes that the central purpose of a criminal trial is to determine guilt or innocence, and promotes public respect for the criminal process by focusing on the fairness of the trial, rather than the inevitable presence of immaterial error. Stephenson, supra, citing Delaware v. VanArsdall (1986), 475 U.S. 673, 681, 89 L.Ed.2d 674. To undertake a proper harmless-error review, we must review the entire record. See Yates, 500 U.S. at 405.
 {¶ 69} We have reviewed the entire record of Mr. Downing's criminal trial and agree with the trial court in finding no error in the introduction of the subject evidence. Any presumed or perceived errors were overwhelmed by the volume of otherwise authenticated or properly introduced evidence. Cumulative error is irrelevant without some finding of individual error. SeeState v. Wade, 9th Dist. No. 02CA0076-M, 2003-Ohio-2351, at ¶ 55.
 {¶ 70} Mr. Downing's seventh assignment of error is overruled.
 III. {¶ 71} Mr. Downing's assignments of error are overruled. The conviction of the Summit County Court of Common Pleas is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
Exceptions.
Slaby, J., Whitmore, P.J., concur.