DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Appellant, Russell P. Price, Jr., appeals his conviction and sentence out of the Medina County Court of Common Pleas. This Court affirms.
 I. {¶ 2} Price was arrested on September 25, 2005, and indicted on October 4, 2005, on one count of illegal manufacture of drugs (methamphetamine) in violation of R.C. 2925.04(A)(C)(2), a felony of the first degree. He pled not guilty to the charge. On October 12, 2005, Price filed a discovery request which the State answered on October 24, 2005. The State filed its own demand for discovery the same day. *Page 2 
 {¶ 3} On November 10, 2005, Price filed a motion to suppress. The trial court continued the trial from December 12, 2005, to January 17, 2006, due to the filing of the suppression motion. The trial court asserted in its November 28, 2005 journal entry that it would not try the case until after it had ruled on the motion to suppress. The trial court found this to be a reasonable continuance and that "speedy trial time is hereby tolled." On December 1, 2005, Price moved to continue the motion hearing scheduled for December 15, 2005, because defense counsel was scheduled for trial in another case that same day. The next day, the trial court issued a journal entry approved by defense counsel which continued the motion hearing and "rescheduled [it] for some later date to be established by this Court." The trial court rescheduled the suppression hearing for February 17, 2006, and the trial for March 6, 2006. The trial court asserted that speedy trial time continued to be tolled.
 {¶ 4} On March 16, 2006, the trial court issued a journal entry in which it referenced Price's motion to suppress and discussed considerations for determining the sufficiency of affidavits in support of search warrants. The trial court did not rule on Price's motion to suppress; rather, it asserted that it must further consider the issues raised by the motion at a later hearing to be scheduled. By a separate entry filed the same day, the trial court scheduled a hearing on Price's motion to suppress for April 14, 2006. On March 22, 2006, the trial court sua sponte rescheduled the suppression hearing for April 21, 2006. On April 25, *Page 3 
2006, the trial court sua sponte rescheduled the suppression hearing for June 1, 2006. On June 14, 2006, the trial court issued a journal entry, denying Price's motion to suppress. On June 15, 2006, Price filed a post-hearing brief, further arguing that the trial court should grant his motion to suppress.
 {¶ 5} On June 16, 2006, Price filed a motion to continue the trial scheduled for July 7, 2006. On June 19, 2006, the trial court issued a journal entry, continuing the trial until July 18, 2006. On June 21, 2006, Price again moved to continue the trial scheduled for July 18, 2006, and requested that trial be rescheduled for August 1, 2006. The trial court issued a journal entry, approved by defense counsel and rescheduling the trial for August 1, 2006.
 {¶ 6} On July 25, 2006, Price filed a motion to dismiss on the grounds that his speedy trial rights had been violated. The State opposed the motion. On August 1, 2006, Price filed an amended motion to dismiss. On August 8, 2006, the trial court issued a journal entry denying Price's motion to dismiss.
 {¶ 7} On August 2, 2006, Price, pro se, moved the trial court for the appointment of alternate counsel due to a conflict of interest. The trial court appointed alternate counsel the same day. Also on August 2, 2006, alternate counsel filed both a motion for a bill of particulars and a request for discovery.
 {¶ 8} On September 7, 2006, Price filed a pro se notice of interlocutory appeal regarding the trial court's August 8, 2006 order denying his motion to dismiss for violation of his right to speedy trial. This Court dismissed the appeal *Page 4 
by journal entry dated September 27, 2006, for lack of a final, appealable order. State v. Price, 9th Dist. No. 06CA0080-M. On September 14, 2006, Price filed a pro se notice of interlocutory appeal regarding the trial court's June 14, 2006 order denying his motion to suppress. This Court dismissed the appeal by journal entry dated October 13, 2006.State v. Price, 9th Dist. No. 06CA0083-M.
 {¶ 9} On September 25, 2006, the Honorable James Kimbler recused himself from the case. On October 5, 2006, the Honorable Christopher Collier transferred the case to his docket.
 {¶ 10} On October 17, 2006, Price filed an updated motion to dismiss for violation of his right to speedy trial. He addressed only the time period up until the trial court ruled on his motion to suppress on June 14, 2006. On October 18, 2006, the trial court denied Price's updated motion to dismiss upon consideration of the defendant's brief, the court docket and Judge Kimbler's August 8, 2006 decision.
 {¶ 11} On November 27, 2006, Price filed a motion for a hearing on issues unresolved as of the last suppression hearing. He supplemented his motion with pages 38-42 of what was purported to be part of the transcript from an earlier suppression hearing.
 {¶ 12} The case proceeded to trial on December 11, 2006. Immediately prior to trial, the judge noted on the record that no suppression issues had been left unresolved and that the trial court had ruled on all motions. The trial court noted *Page 5 
that it had reviewed the transcript[1] of the suppression hearing proceedings and Judge Kimbler's ruling and found that the issues had been resolved.
 {¶ 13} At the conclusion of trial, the jury found Price guilty of the manufacture of drugs. The jury separately found that the offense was committed in a public place or public accommodation. The trial court sentenced Price to seven years in prison. Price timely appeals, raising four assignments of error for review.
 II. ASSIGNMENT OF ERROR I "THE EVIDENCE AT TRIAL WAS INSUFFICIENT TO SUPPORT THE JURY'S GUILTY VERDICT AND THE CONVICTIONS THEREFORE WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE." (sic)
 {¶ 14} Price argues that his conviction for the illegal manufacture of drugs was not supported by sufficient evidence and was against the manifest weight of the evidence. This Court disagrees. *Page 6 
 {¶ 15} A review of the sufficiency of the State's evidence and the manifest weight of the evidence adduced at trial are separate and legally distinct determinations. State v. Gulley (Mar. 15, 2000), 9th Dist. No. 19600. "While the test for sufficiency requires a determination of whether the state has met its burden of production at trial, a manifest weight challenge questions whether the state has met its burden of persuasion." Id., citing State v. Thompkins (1997),78 Ohio St.3d 380, 390 (Cook J., concurring). When reviewing the sufficiency of the evidence, this Court must review the evidence in a light most favorable to the prosecution to determine whether the evidence before the trial court was sufficient to sustain a conviction.State v. Jenks (1991), 61 Ohio St.3d 259, 279.
 "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." Id. at paragraph two of the syllabus.
 {¶ 16} A determination of whether a conviction is against the manifest weight of the evidence, however, does not permit this Court to view the evidence in the light most favorable to the State to determine whether the State has met its burden of persuasion. State v. Love, 9th Dist. No. 21654, 2004-Ohio-1422, at ¶ 11. Rather, *Page 7 
"an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Otten (1986), 33 Ohio App.3d 339, 340.
A new trial should be granted, however, only in the exceptional case, where the evidence weighs heavily against the conviction. Id.
 {¶ 17} This Court has stated that "[sufficiency is required to take a case to the jury[.] * * * Thus, a determination that [a] conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency." (Emphasis omitted.) State v. Roberts (Sept. 17, 1997), 9th Dist. No. 96CA006462.
 {¶ 18} Price was convicted of the illegal manufacture of drugs (methamphetamine) in violation of R.C. 2925.04(A)(C)(2), which provided in relevant part at the time of the offense:
 "No person shall * * * knowingly manufacture or otherwise engage in any part of the production of a controlled substance. * * * If the drug involved in the violation is methamphetamine, * * * and if the offense was committed on public premises, illegal manufacture of drugs is a felony of the first degree[.]"
 {¶ 19} R.C. 2901.22(B) states:
 "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." *Page 8 
 {¶ 20} R.C. 2925.01(J) defines "manufacture" as
 "to plant, cultivate, harvest, process, make, prepare, or otherwise engage in any part of the production of a drug, by propagation, extraction, chemical synthesis, or compounding, or any combination of the same, and includes packaging, repackaging, labeling, and other activities incident to production."
 {¶ 21} R.C. 2925.01(II) defines "public premises" as "any hotel, restaurant, tavern, store, arena, hall, or other place of public accommodation, business, amusement, or resort."
 {¶ 22} Officer Katie Sipos of the Wadsworth Police Department testified that she was on duty during the evening of September 25, 2005. She testified that she was running license plates in the parking lot of the Legacy Inn, a motel in Wadsworth, Medina County, Ohio, something she did routinely in that high crime area to identify outstanding warrants or illegal activity such as car theft. She testified that the license plate of a car parked in front of room 108 did not match the vehicle or its identification number. She testified that she asked the hotel clerk who was staying in room 108 and discovered that Price had rented the room. She testified that she ran Price's information through the computer and discovered that he had an outstanding felony warrant. She testified that she then called for backup assistance.
 {¶ 23} Officer Sipos testified that she knocked on the door of room 108 with her flashlight for several minutes. She testified that she recognized Price through the window and yelled for him to come out of the room. She testified that *Page 9 
he came to the door and was taken into custody by one of the officers. Officer Sipos testified that she then noticed a female sitting on a bed in the room, and she went in to talk with her. She testified that the female was evasive and deceptive about her identity.
 {¶ 24} Officer Sipos testified that, while in the room, she noticed Mason jars on a spare bed, a rolled up dollar bill and a small mirror on a nightstand, and some marijuana in an ashtray by the mirror. She testified that she also noticed some tubing in a trash can. Officer Sipos testified that she has attended classes to become familiar with products used in the manufacture of methamphetamines. She testified that the glass jars and tubing are items commonly used in such manufacture. She testified that she also noticed a chemical smell upon entering the room.
 {¶ 25} Officer Sipos testified that she determined that the vehicle parked outside the room belonged to the female in the room, eventually identified as Kerry Nelson. She testified that Nelson gave her the keys to the vehicle and permission to search it. Officer Sipos testified that she found methamphetamine, coffee filters, a snorting tube with a white powdery residue, Ziploc Baggie-type bags, muriatic acid, and plastic drink bottles. She testified that Nelson also had some rolling papers and receipts for naphtha and acetone. She testified that the filters, tubing, bottles, acid, acetone and naphtha were items commonly used in the manufacture of methamphetamine. Officer Sipos testified that Price asserted that *Page 10 
"whatever was in the car he would take a fall for." She testified that her thought upon seeing these types of items in the room and car was that Price and Nelson "were cooking meth." She testified that methamphetamine can be smoked, snorted or injected.
 {¶ 26} Officer James Walser of the Wadsworth Police Department testified that he provides follow-up investigation for cases and logs property in and out of the department property room, including when it is taken to the Bureau of Criminal Investigation ("BCI") for testing. He identified evidence found at the scene and testified that it was sent to BCI for testing.
 {¶ 27} Officer Andrew Blubaugh of the Wadsworth Police Department testified that he arrived at the Legacy Inn in Wadsworth at approximately 11:00 p.m. on September 25, 2005, to assist Officer Sipos. He testified that he entered room 108 after Officer Sipos had entered to ensure her safety. He testified that during his initial scan of the room, he noticed some suspicious items, including glass jars and tubing attached to a plastic bottle, which his training made him believe was a gas generator used in the production of methamphetamine. He testified that he also noticed an odor in the room.
 {¶ 28} Officer Blubaugh testified that Officer Sipos found several types of chemicals in Kerry Nelson's car. He testified that the police then called for backup by Medway (a multijurisdictional drug investigation unit) and a Hazmat crew due to the potential danger from the chemicals. He testified that a search *Page 11 
warrant was obtained, and that Medway ventilated the area and removed the hazardous chemicals. He testified that he and the other officers then returned to the room and conducted a more thorough search.
 {¶ 29} Officer Charles DeFelice of the Medway Drug Enforcement Agency testified that he has received extensive training in identifying the manufacture of methamphetamine. He testified that he was called to the Legacy Inn on September 25 and 26, 2005, to "process the scene." He explained that that means rendering the area safe, ventilating the room, and then going through each piece of evidence, specifically, photographing, logging and sampling the evidence. He testified that he took the photographs of the evidence in this case.
 {¶ 30} Officer DeFelice identified the photographs of the evidence in this case. He testified that the following items were found during the search: a rolled dollar bill and mirror, a gallon jug of muriatic acid, plastic bottles with liquid and residue, a bottle of nail polish remover containing acetone, vials, straws, Ziploc bags, stained coffee filters, a shopping list of chemicals, glass jars, a gas generator made from plastic bottles and tubing, off-white powder, a bottle with saturated matchbook striker plates, naphtha, peroxide, a hot plate, scales, beakers, and receipts for such items.
 {¶ 31} Officer DeFelice testified as to how these various items would be used in the manufacture of methamphetamine. For example, he testified that matchbook striker plates contain red phosphorous, which is used in one process of *Page 12 
manufacturing methamphetamine. He testified coffee filters are used during the extraction of pseudoephedrine pills, specifically to separate the ephedrine from the filler or binding agents in the pills. In addition, he testified that a gas generator is used to produce hydrochloride gas which causes liquid methamphetamine to crystallize. Officer DeFelice testified that hot plates are used to speed up the process of evaporation during the extraction of pseudoephedrine or red phosphorous. He concluded, based on the items seized from room 108 and Nelson's car, that Price and Nelson were using the room as a "meth lab."
 {¶ 32} Officer DeFelice testified that he observed two processes for the manufacture of methamphetamine being conducted in room 108. First, he testified that Sudafed pills were being dissolved in alcohol in an effort to extract the ephedrine. He testified that the second on-going process was the extraction of red phosphorous from matchbook striker plates.
 {¶ 33} Jeffrey Houser of the Ohio Bureau of Criminal Identification and Investigation testified that he analyzes evidence submitted by various police agencies for the presence of controlled substances. He testified that he tested the evidence submitted in this case. He testified that he performed two types of tests on the substances submitted and determined that the evidence consisted of several grams of pseudoephedrine, some phosphorous and iodine. He testified that those substances are used in the manufacture of methamphetamine. He further testified *Page 13 
that some substances submitted in this case were found to contain methamphetamine itself.
 {¶ 34} Agent Charles Ellis of the Medway Drug Enforcement Agency testified that he has received special training to identify methamphetamine labs. He testified that he was called to the scene with Officer DeFelice and that they found components consistent with a methamphetamine lab.
 {¶ 35} Price presented the testimony of David Fretthold, a forensic toxicologist, who testified regarding the ingredients and process used to manufacture methamphetamine. He testified that he had seen several "bathtub [methamphetamine] labs" in California. He testified that he did not believe that the list of items found by Medway contained all items necessary to manufacture methamphetamine. Specifically, he did not believe that enough iodine was found. He testified that certain other ingredients which could be used to manufacture methamphetamine had not been found. He further testified that he was not familiar with the method of soaking matchbook striker plates to remove the red phosphorous. Rather, he testified that he believed that the phosphorous was commonly collected by scraping or filing it off the striker plates. He conceded that he supposed that one could remove the phosphorous by soaking it off and then drying it out. He further conceded that the first step in the production of methamphetamine is the extraction of ephedrine from pills and that that could be accomplished by soaking the pills in some type of liquid. Mr. Fretthold testified *Page 14 
that he did not believe that Price had all the necessary items to complete the process of the manufacture of methamphetamine. He admitted, however, that he was not saying that Price was not engaged in at least part of the process of the manufacture of methamphetamine.
 {¶ 36} This Court finds that this is not the exceptional case, where the evidence weighs heavily in favor of Price. The weight of the evidence supports the conclusion that Price knowingly manufactured or engaged in some part of the production of methamphetamine in a public place. A thorough review of the record compels this Court to find no indication that the jury lost its way and committed a manifest miscarriage of justice in convicting Price of the illegal manufacture of drugs (methamphetamine). Price's conviction is not against the manifest weight of the evidence. Because Price's conviction is not against the manifest weight of the evidence, there necessarily was sufficient evidence to support the jury's verdict. Consequently, Price's first assignment of error is overruled.
 ASSIGNMENT OF ERROR II "THE COURT ERRED WHEN IT IMPOSED MORE THAN A MINIMUM SENTENCE FOR THE OFFENSE FOR WHICH THE DEFENDANT WAS CONVICTED."
 {¶ 37} Price argues that the trial court erred by imposing greater than the minimum sentence because it relied on facts only a jury could find. This Court disagrees. *Page 15 
 {¶ 38} In State v. Foster, 109 Ohio St.3d 1, 2006-Ohio-856, the Ohio Supreme Court held that Ohio's sentencing structure was unconstitutional to the extent that it required judicial fact finding. Id. at paragraphs one through seven of the syllabus. In constructing a remedy, the Court excised the portions of the statute it found to offend theSixth Amendment and thereby granted full discretion to trial court judges to sentence defendants within the bounds prescribed by statute. See id.;State v. Dudukovich, 9th Dist. No. 05CA008729, 2006-Ohio-1309, at ¶ 19.
 {¶ 39} The U.S. Supreme Court took specific note that the exercise of this discretion, when not in the form of mandatory fact-finding, does not violate the Constitution.
 "If the Guidelines as currently written could be read as merely advisory provisions that recommended, rather than required, the selection of particular sentences in response to differing sets of facts, their use would not implicate the Sixth Amendment. We have never doubted the authority of a judge to exercise broad discretion in imposing a sentence within a statutory range. Indeed, everyone agrees that the constitutional issues presented by these cases would have been avoided entirely if Congress had omitted from the SRA the provisions that make the Guidelines binding on district judges; it is that circumstance that makes the Court's answer to the second question presented possible. For when a trial judge exercises his discretion to select a specific sentence within a defined range, the defendant has no right to a jury determination of the facts that the judge deems relevant." (Emphasis added and internal citations omitted.) U.S. v. Booker (2005), 543 U.S. 220, 233. *Page 16 
Accordingly, to the extent that the trial court may have relied upon certain facts which it found relevant, after Foster, Price had no right to a jury determination of those facts. Price's second assignment of error, therefore, is overruled.
 ASSIGNMENT OF ERROR III "THE COURT ERRED WHEN IT DENIED DEFENDANTS (sic) MOTIONS TO DISMISS BASED UPON HIS RIGHT TO A SPEEDY TRIAL."
 {¶ 40} Price argues that the trial court erred by denying his motion to dismiss based on a violation of his right to speedy trial. This Court disagrees.
 {¶ 41} "When reviewing an appellant's claim that he was denied his right to a speedy trial, this Court applies the de novo standard of review to questions of law and the clearly erroneous standard of review to questions of fact." State v. Downing, 9th Dist. No. 22012,2004-Ohio-5952, at ¶ 36. See, also, State v. Hamlet, 9th Dist. No. 04CA008527, 2005-Ohio-3110, at ¶ 15.
 {¶ 42} The right to a speedy trial by the State is guaranteed to a criminal defendant by the Sixth and Fourteenth Amendments to the United States Constitution. Klopfer v. North Carolina (1967), 386 U.S. 213,222-223. The same right is conferred to a criminal defendant by Section10, Article I, Ohio Constitution. State v. O'Brien (1987),34 Ohio St.3d 7, 8. A criminal defendant may waive his right to a speedy trial only if it is knowingly, voluntarily and intelligently made. State v. Adams
(1989), 43 Ohio St.3d 67, 69. The waiver must *Page 17 
also be expressed in writing or made in open court on the record.State v. King (1994), 70 Ohio St.3d 158, syllabus.
 {¶ 43} R.C. 2945.71 et seq. is an enforcement mechanism to make sure the constitutional right to a speedy trial is upheld. State v.Pachay (1980), 64 Ohio St.2d 218, syllabus. R.C. 2945.71 dictates the time limits in which a defendant must be brought to trial. R.C.2945.71(C)(2) provides that "[a] person against whom a charge of felony is pending * * * [s]hall be brought to trial within two hundred seventy days after the person's arrest." R.C. 2945.71(E) addresses the computation of time and provides that "each day during which the accused is held in jail in lieu of bail on the pending charge shall be counted as three days." Time is calculated to run the day after the date of arrest. State v. Friedhof (July 10, 1996), 9th Dist. No. 2505-M, citingState v. Steiner (1991), 71 Ohio App.3d 249, 250-51. See, also, Crim.R. 45(A).
 {¶ 44} Pursuant to R.C. 2945.73, if a defendant is not brought to trial within the prescribed time period, the trial court must discharge the defendant upon motion for dismissal prior to or at the commencement of trial. R.C. 2945.73(B). However, the time within which a defendant must be brought to trial can be tolled.
 {¶ 45} R.C. 2945.72(H) provides that the statutorily prescribed time for a speedy trial may be lengthened by any period of continuance granted on the accused's own motion, or by any reasonable period granted other than on the accused's motion. See, also, Hamlet at ¶ 18. In addition, this Court has held that *Page 18 
the time in which a trial court is required to bring a criminal defendant to trial is effectively extended, or tolled, when the defendant files a motion to dismiss until the time when the trial court denies the motion. State v. Hughes, 9th Dist. No. 02CA008206, 2003-Ohio-5045, at ¶ 15, citing State v. Bickerstaff (1984),10 Ohio St.3d 62, 67.
 {¶ 46} Furthermore, this Court has held that "a motion to suppress tolls the speedy trial clock from the time the defendant files the motion until the trial court disposes of the motion, as long as the trial court's disposition occurs within a reasonable time." State v.Kolvek, 9th Dist. No. 21808, 2004-Ohio-2515, at ¶ 7, citing State v.Arrizola (1992), 79 Ohio App.3d 72, 76. Additionally, R.C. 2945.72(E) provides that the statutorily prescribed time for a speedy trial may be lengthened by "[a]ny period of delay necessitated by reason of a * * * motion, proceeding, or action made or instituted by the accused." The Ohio Supreme Court has held that "a demand for discovery [by the defendant] or a bill of particulars is a tolling event pursuant to R.C. 2945.72(E)." State v. Brown, 98 Ohio St.3d 121, 2002-Ohio-7040, at ¶ 26.
 {¶ 47} In this case, Price was in jail from September 25, 2005, until the day of trial. Accordingly, the State had ninety days, exclusive of tolling, in which to bring him to trial. A total of 303 days elapsed between the date of his arrest and the date that he filed his motion to dismiss. *Page 19 
 {¶ 48} Price filed a discovery request, thereby tolling 12 days until the State answered the request. Subsequently, Price filed a motion to suppress on November 10, 2005. The trial court issued its ruling on the motion to suppress on June 14, 2006, tolling another 216 days. Although Price states that the trial court must rule on defense motions within a reasonable period of time, he does not assert how or even that the time the court took to rule on his motion to suppress was unreasonable. Therefore, time was tolled for that entire time. Accordingly, time was tolled for 228 days prior to the filing of his motion to dismiss on July 25, 2006. By the time of the filing of Price's motion to dismiss, only 75 days had elapsed for purposes of speedy trial calculations, well within the 90-day limit.
 {¶ 49} Price's third assignment of error is overruled.
 ASSIGNMENT OF ERROR IV "THE TRIAL COURT ERRED WHEN IT DENIED THE DEFENDANTS (sic) MOTION TO SUPPRESS THE EVIDENCE OBTAINED AS A RESULT OF THE ILLEGAL WARRANTLESS SEARCH; THE ILLEGAL SEARCH INCIDENT TO THAT ENTRY AND THE SUBSEQUENT SEARCH AND SEIZURE THAT WAS BASED ON THE INVALID/INSUFFICIENT AFFIDAVIT FOR THE SEARCH WARRANT[.]"
 {¶ 50} Price argues that the trial court erred by denying his motion to suppress evidence. This Court disagrees.
 {¶ 51} As an initial matter, this Court must address the issues regarding the record on appeal. App.R. 9(B) states in relevant part:
 "At the time of filing the notice of appeal the appellant, in writing, shall order from the reporter a complete transcript or a transcript of *Page 20 
the parts of the proceedings not already on file as the appellant considers necessary for inclusion in the record and file a copy of the order with the clerk. * * * If the appellant intends to urge on appeal that a finding or conclusion is unsupported by the evidence or is contrary to the weight of the evidence, the appellant shall include in the record a transcript of all evidence relevant to the findings or conclusion."
Pursuant to App.R. 12(A)(1)(b), this Court is limited to determining the appeal on the record as provided in App.R. 9.
 {¶ 52} In this case, Price failed to file a praecipe with the trial court requesting the preparation of a transcript of the suppression hearing.[2] An appellant is responsible for providing this Court with a record of the facts, testimony, and evidentiary matters necessary to support the assignments of error. Volodkevich v. Volodkevich (1989),48 Ohio App.3d 313, 314. Specifically, it is an appellant's duty to transmit the transcript of proceedings. App.R. 10(A); Loc.R. 5(A). "When portions of the transcript which are necessary to resolve assignments of error are not included in the record on appeal, the reviewing court has `no choice *Page 21 
but to presume the validity of the [trial] court's proceedings, and affirm.'" Cuyahoga Falls v. James, 9th Dist. No. 21119, 2003-Ohio-531, at ¶ 9, quoting Knapp v. Edwards Laboratories (1980), 61 Ohio St.2d 197,199. Although he cites to a purported transcript of the suppression hearing, Price failed to provide such transcript for purposes of this appeal.
 {¶ 53} Because the transcript of the suppression hearing is necessary for a determination of Price's fourth assignment of error, this Court must presume regularity in the trial court's proceedings and affirm the judgment of the trial court. See Knapp, 61 Ohio St.2d at 199. Price's fourth assignment of error is overruled.
 III. {¶ 54} Price's assignments of error are overruled. The judgment of his conviction and sentence out of the Medina Court of Common Pleas is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27. *Page 22 
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to appellant.
DONNA J. CARR FOR THE COURT
WHITMORE, J. CONCURS
[1] The transcript of the suppression hearing was not filed with the trial court as part of the record.
[2] Price's praecipe to the court reporter, filed January 10, 2007, requests only the preparation of "the entire transcript of the Jury Trial (December 11th and 12th, 2006) and the Sentencing Hearing (December 18, 2006)." A transcript of the suppression hearing was clearly prepared at some time because Judge Collier asserted that he reviewed it to determine whether any suppression issues were unresolved as of the date of the trial. However, no transcript of any suppression hearing was docketed by the clerk as having been filed in the trial court. Furthermore, no suppression hearing transcripts are contained in the trial court record, except for 5 random pages purportedly from the suppression hearing transcript which Price attached to his motion for a hearing on alleged unresolved issues. Finally, Price did not request the preparation of any suppression hearing transcripts for the purpose of this appeal.