[Cite as *State v. Wilson*, 2019-Ohio-5099.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

STATE OF OHIO

    Appellant

v.

CRAIG A. WILSON

    Appellee

C.A. No.     29227

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.     CR-2018-05-1611

DECISION AND JOURNAL ENTRY

Dated: December 11, 2019

CARR, Presiding Judge.

{¶1} Appellant, the State of Ohio, appeals from the decision of the Summit County Court of Common Pleas, granting Appellee, Craig Wilson's, motion to suppress. This Court affirms.

I.

{¶2} Wilson's eighteen-year-old niece told her high school counselor that Wilson had engaged in sexual activity with her. The counselor notified the authorities, and a police officer came to the school to speak with the counselor and the niece. As a result of those conversations, the investigating officer learned that the niece was in special education classes and was intellectually disabled.

{¶3} Later that same day, Wilson came to the police station to speak with the investigating officer. He initially denied that he had engaged in any type of sexual activity with his niece. The investigating officer repeatedly noted that the niece was eighteen, however, and

urged Wilson to admit to any consensual sexual activity that might have occurred. She repeatedly informed him that an admission to consensual sexual activity would allow her to close the case and avoid a drawn-out investigation. She did not comment on the niece's intellectual disability or how it might affect her ability to consent. As a result of the investigating officer's representations, Wilson ultimately made several admissions.

{¶4} A grand jury indicted Wilson on two counts of rape, two counts of sexual battery, and a single count of gross sexual imposition. Two of his charges alleged that he forced or coerced his niece, but his remaining charges were based on her having lacked the capacity to consent as the result of a substantial impairment. Wilson filed a motion to suppress, arguing that his admissions were involuntary and a direct result of the investigating officer's deceptive tactics. The court held a hearing on his motion and ultimately agreed that Wilson's admissions were a product of coercion. The court granted Wilson's motion to suppress, and the State immediately appealed from its decision.

{¶5} The State's appeal is now before us and contains a single assignment of error for our review.

II.

**ASSIGNMENT OF ERROR**

THE TRIAL COURT ERRED IN GRANTING THE APPELLEE'S MOTION
TO SUPPRESS EVIDENCE.

{¶6} In its sole assignment of error, the State argues that the trial court erred by granting Wilson's motion to suppress. The State argues that there was no evidence the investigating officer used an inherently coercive tactic when interviewing Wilson. Further, it argues that Wilson's admissions were voluntary under the totality of the circumstances. Upon review, we reject the State's argument.

{¶7}    A motion to suppress evidence presents a mixed question of law and fact.  *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8.  "When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses."  *Id.*, citing *State v. Mills*, 62 Ohio St.3d 357, 366 (1992).  Thus, a reviewing court "must accept the trial court's findings of fact if they are supported by competent, credible evidence."  *Burnside* at ¶ 8.  "Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard."  *Id.*, citing *State v. McNamara*, 124 Ohio App.3d 706 (4th Dist.1997).

{¶8}    "[T]he Due Process Clause of the Fourteenth Amendment requires the exclusion of confessions that are involuntarily given by an accused."  *State v. Antoline*, 9th Dist. Lorain No. 02CA008100, 2003-Ohio-1130, ¶ 21.  "A confession is involuntary * * * if it is the product of 'coercive police activity.'"  *State v. Loza*, 71 Ohio St.3d 61, 66 (1994), quoting *Colorado v. Connelly*, 479 U.S. 157, 167 (1986).  *See also State v. Ward*, 9th Dist. Lorain No. 95CA006214, 1996 WL 425904, *1 (July 31, 1996) ("'Voluntariness' is the absence of physical and psychological coercion on the part of the police.").  When ruling on the admissibility of an allegedly coerced confession, a court must consider whether the police used an inherently coercive tactic to secure it.  *State v. Osie*, 140 Ohio St.3d 131, 2014-Ohio-2966, ¶ 93, quoting *State v. Perez*, 124 Ohio St.3d 122, 2009-Ohio-6179, ¶ 71.  If so, the court must evaluate the voluntariness of the confession under the totality of the circumstances.  *Perez* at ¶ 71.  *Accord State v. Cleland*, 9th Dist. Medina No. 09CA0070-M, 2011-Ohio-6786, ¶ 5-6.  The State bears the burden of proving voluntariness.  *State v. Hill*, 64 Ohio St.3d 313, 318 (1992).

{¶9} Inherently coercive tactics can be either physical or psychological in nature. *Blackburn v. Alabama*, 361 U.S. 199, 206 (1960). *Accord United States v. Finch*, 998 F.2d 349, 356 (6th Cir.1993). Examples include (1) physical abuse, *State v. Clark*, 38 Ohio St.3d 252, 261 (1988); (2) "deprivation of food, medical treatment, or sleep," *id.*; (3) threats of physical violence, *Beecher v. Alabama*, 389 U.S. 35, 38 (1967); (4) illusory promises of leniency, *United States v. Johnson*, 351 F.3d 254, 262 (6th Cir.2003); and (5) threats to prosecute third parties when no legal basis for those threats exist, *Osie* at ¶ 96-97. "'[A] mere threat to take action which would be lawful and necessary absent cooperation is not objectionable.'" *Osie* at ¶ 98, quoting 2 LaFave, Israel, King & Kerr, *Criminal Procedure*, Section 6.2(c), at 623 (3d Ed.2013), fn. 96. Likewise, "[o]fficers may discuss the advantages of telling the truth, advise suspects that cooperation will be considered, or even suggest that a court may be lenient with a truthful defendant." *State v. Belton*, 149 Ohio St.3d 165, 2016-Ohio-1581, ¶ 111.

{¶10} "[T]he totality of the circumstances regarding the voluntariness of a [confession] includes 'the age, mentality, and prior criminal experience of the accused; the length, intensity, and frequency of interrogation; the existence of physical deprivation or mistreatment; and the existence of threat or inducement.'" *State v. Rafferty*, 9th Dist. Summit No. 26724, 2015-Ohio-1629, ¶ 37, quoting *State v. Edwards*, 49 Ohio St.2d 31 (1976), paragraph two of the syllabus. "The use of deceit by the authorities is not conclusive in the voluntariness determination." *Ward* at *3. *Accord State v. Downing*, 9th Dist. Summit No. 22012, 2004-Ohio-5952, ¶ 65. It is "merely one of the relevant factors bearing on the issue [of voluntariness]." *Ward* at *3. Even so, in certain instances, an officer's "misstatement of the law may cause [] a confession to be involuntary." *State v. Robinson*, 9th Dist. Summit No. 16766, 1995 WL 9424, *4 (Jan. 11, 1995). *See also State v. Smith*, 7th Dist. Mahoning No. 12 MA 64, 2013-Ohio-342, ¶ 26-27;

*State v. Arrington*, 14 Ohio App.3d 111, 115-116 (6th Dist.1984). "[E]ach case turns on its own set of special circumstances." *Ward* at *2.

{¶11} The trial court found that the officer who investigated this matter interviewed Wilson's niece at her high school after the niece informed school officials that she and Wilson had engaged in sexual activity. Once she spoke with the niece, the investigating officer initiated an investigation because she believed the niece to be intellectually challenged. That same day, Wilson and his parents came to the police station so that the investigating officer could speak with him about his niece's allegations.

{¶12} The trial court found that, at the start of their interview, the investigating officer told Wilson he was not under arrest and was free to leave at any time. At no point in time did Wilson ask to leave or stop the interview. Although he repeatedly denied his niece's allegations, the court found that the investigating officer's tactics ultimately caused Wilson to admit to some degree of inappropriate sexual activity. Those tactics included the officer (1) telling Wilson the situation was not even a criminal matter yet; (2) telling him his niece had alleged consensual sexual activity; (3) repeatedly asking him to corroborate his niece's story; (4) repeatedly telling him the investigation would go on for months unless he and his niece gave consistent accounts; (5) repeatedly assuring him that she was unconcerned with any consensual activity that had taken place; (6) emphasizing that the niece was an adult and could make her own decisions; and (7) casting aspersions on the niece's boyfriend by indicating that he did not understand what had happened and was "wrong" to describe it as a rape.

{¶13} The trial court found that the investigating officer misrepresented the law on multiple occasions when she made it appear that any consensual sexual activity that might have taken place between Wilson and his niece was not a criminal act. Because the officer was aware

of the niece's intellectual disability, the court found that her "representation to [Wilson] that the [niece] [was] an adult and able to make decisions amount[ed] to falsehoods upon which [Wilson] reasonably relied * * *." (Emphasis omitted.) The court found that the investigating officer engaged in a pattern of deception and "indirectly told [Wilson,] if he confirmed the [niece's] statement, there would be no charges against him." It ultimately determined "that the totality of the circumstances surrounding [Wilson's] interview rendered his statements involuntary because [the investigating officer's] tactics * * * amounted to coercion such that his will was overborne."

{¶14} The State argues that the trial court erred by granting Wilson's motion to suppress for two reasons. First, it argues that the court erred when it found that the investigating officer had subjected Wilson to inherently coercive tactics. According to the State, the only outright threat the officer made was that her investigation would continue for months if Wilson could not corroborate the niece's statement. Because that statement was true, the State argues, it was not inherently coercive. Likewise, the State contends that the investigating officer's representations about the legality of consensual sexual activity between adults were accurate, just incomplete. By not informing Wilson that substantially impaired individuals cannot consent, the officer only reinforced Wilson's own false belief that his niece's age would immunize him from prosecution. The State maintains that, at most, the officer's statements amounted to "a barrage of balderdash."

{¶15} Second, the State argues that, even if the investigating officer employed one or more inherently coercive tactics, Wilson's statements were voluntary under the totality of the circumstances. The State argues that Wilson was a competent adult who admitted he had prior criminal experience. It notes that his interview lasted less than an hour, he was never subjected to any form of deprivation, he was told more than once that he was free to leave, and he came to and left the station with his parents. According to the State, any deception on the part of the

investigating officer was not enough to outweigh the remaining circumstances in support of a finding of voluntariness.

{¶16} Even if the investigating officer never overtly or indirectly threatened Wilson, the record supports the trial court's conclusion that she used inherently coercive tactics when interviewing him. The investigating officer acknowledged on cross-examination that she had used a "deceitful interview technique." She admitted that she had information the niece was intellectually disabled and knew the law regarding consent, but nevertheless wanted to make Wilson believe what had happened was consensual. Throughout the interview, she repeatedly assured Wilson she was not concerned with any consensual sexual activity that might have occurred between him and his niece. She stated that she "[did not] * * * care what [the two] did as consenting adults. She's 18 and you're an adult. * * * What you guys do in your private homes is your business." She also stated: "As long as you guys both know what happened and that you both were consenting and you both said stop and you both stopped, that's all you need to worry about." The investigating officer portrayed the niece as an adult capable of deciding whether to engage in consensual sexual activity. At one point, she stated:

> we don't have to make it a rape case and send everything to the Bureau of Criminal Investigation. Why waste their time? If it was consensual and some stuff happened and I can close the case, then thank goodness. Why waste everybody's time for something that did happen and [was] consensual? There's no point in wasting anyone's time, not yours, not mine, * * * not BCI's, not the hospital['s].

The investigating officer repeatedly informed Wilson that she could close the case if he confirmed his niece's story.

{¶17} The investigating officer's statements throughout the interview made it appear that Wilson would not be criminally liable for any sexual activity that occurred so long as it was consensual. Thus, the trial court properly determined that she employed inherently coercive

tactics when interviewing him. *See State v. Copley*, 170 Ohio App.3d 217, 2006-Ohio-6478, ¶ 18-21 (9th Dist.), citing *Robinson*, 1995 WL 9424, at *4. *See also Smith*, 2013-Ohio-342, at ¶ 26-27; *Arrington*, 14 Ohio App.3d at 115-116. The only question is whether her tactics rendered Wilson's inculpatory statements involuntary under the totality of the circumstances. *See Perez*, 124 Ohio St.3d 122, 2009-Ohio-6179, at ¶ 71.

{¶18} Upon review, we cannot conclude that the trial court erred when it determined that Wilson's statements were involuntary under the totality of the circumstances. We recognize that deceit is only one factor in a voluntariness determination, *Ward*, 1996 WL 425904, at *3, and that several other factors present in this case weigh in favor of a finding of voluntariness. Those factors include the relatively short length of Wilson's interview, the fact that he was told twice that he was free to leave, and the fact that he was not subjected to any form of physical deprivation or mistreatment. *See Edwards*, 49 Ohio St.2d 31 at paragraph two of the syllabus. Even so, if egregious enough under the circumstances, an officer's "misstatement of the law may cause [] a confession to be involuntary." *Robinson* at *4. *See also Ward* at *2 (as to the issue of voluntariness "each case turns on its own set of special circumstances"). Further, "evidence induced by a promise of immunity [is] coerced evidence and cannot be used against the accused." *Robinson* at *6. *Accord Copley*, 2006-Ohio-6478, at ¶ 18-19. The record reflects that the investigating officer engaged in a pattern of misconduct and repeated her misrepresentations "over and over in an attempt to convince [Wilson] to admit to consensual sex." *See Smith*, 2013-Ohio-342, at ¶ 27. Wilson only admitted to some degree of sexual activity after the investigating officer repeatedly indicated that consensual sexual activity with the victim was legal and that she could close the case if the sexual activity that occurred was consensual. *See Robinson* at *6.; *State v. Logan*, 9th Dist. Summit Nos. 12904, 12926, 12927, 1987 WL 14436, *5 (July 15,

1987). "[S]ince [the officer's] statements and representations were the motivating cause of [Wilson's] decision to speak, his incriminating statements, not being freely self-determined, were improperly induced, were involuntary and were inadmissible as a matter of law." *Arrington* at 116. *Accord Smith* at ¶ 27. Accordingly, the trial court did not err by granting Wilson's motion to suppress. The State's sole assignment of error is overruled.

III.

{¶19} The State's sole assignment of error is overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

DONNA J. CARR
FOR THE COURT

HENSAL, J.
SCHAFER, J.
CONCUR.


APPEARANCES:

SHERRI BEVAN WALSH, Prosecuting Attorney, and JACQUENETTE S. CORGAN, Assistant Prosecuting Attorney, for Appellant.

DAVID M. LOWRY, Attorney at Law, for Appellee.